**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LEON HAWKINS,<br><br>          Petitioner,<br><br>     v.<br><br><br>CONNIE GIPSON, Warden,<br><br>          Respondent. | Case No. 1:13-cv-01532-BAM-HC<br><br>ORDER CORRECTING THE NAME OF RESPONDENT<br><br>ORDER GRANTING RESPONDENT'S MOTION TO DISMISS THE PETITION (DOC. 10), DISMISSING THE PETITION FOR WRIT OF HABEAS CORPUS (DOC. 1), AND DIRECTING THE ENTRY OF JUDGMENT FOR RESPONDENT<br><br>ORDER DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting their consent in writings signed by the parties or their representatives and filed by Petitioner on October 4, 2013, and on behalf of Respondent on October 7, 2013.

Pending before the Court is the Respondent's motion to dismiss the petition for untimeliness and failure to exhaust state court

1

remedies, which was filed on November 27, 2013.  Petitioner filed opposition on December 19, 2013.  Respondent filed a reply on December 23, 2013.

I.   Order to Correct the Name of Respondent

The motion to dismiss was filed on behalf of Respondent Connie Gipson, Warden of the Corcoran State Prison where Petitioner is confined.  In the motion, Respondent notes that the correct spelling of Respondent's name is "Gipson," not "Gibson," as the name appeared in the petition.  (Doc. 10, 1 n.1.)

Accordingly, it is ORDERED that the name of the Respondent be CORRECTED to reflect Respondent's true name, namely, Connie Gipson, Warden.

II.   Proceeding by a Motion to Dismiss

Respondent has filed a motion to dismiss the petition on the ground that Petitioner filed his petition outside of the one-year limitation period provided for by 28 U.S.C. § 2244(d)(1) and failed to exhaust state court remedies.

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules) allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court...."

The Ninth Circuit has allowed respondents to file motions to dismiss pursuant to Rule 4 instead of answers if the motion to dismiss attacks the pleadings by claiming that the petitioner has failed to exhaust state remedies or has violated the state's procedural rules.  See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss a

petition for failure to exhaust state remedies); <u>White v. Lewis</u>, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 to review a motion to dismiss for state procedural default); <u>Hillery v. Pulley</u>, 533 F.Supp. 1189, 1194 & n.12 (E.D.Cal. 1982) (same).  Thus, a respondent may file a motion to dismiss after the Court orders the respondent to respond, and the Court should use Rule 4 standards to review a motion to dismiss filed before a formal answer.  <u>See</u>, <u>Hillery</u>, 533 F. Supp. at 1194 & n.12.

In this case, Respondent's motion to dismiss addresses the untimeliness of the petition pursuant to 28 U.S.C. 2244(d)(1).  The material facts pertinent to the motion are found in copies of the official records of state judicial proceedings which have been provided by Respondent and Petitioner, and as to which there is no genuine factual dispute.  Because Respondent has not filed a formal answer, and because Respondent's motion to dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default, the Court will review Respondent's motion to dismiss pursuant to its authority under Habeas Rule 4.

III.  <u>Procedural Summary</u>

Petitioner was convicted in the Kings County Superior Court (KCSC) of battery upon a peace officer while confined in state prison and was further found to have suffered two prior serious felony convictions.  At the sentencing hearing held on May 14, 2010, the court denied a request pursuant to <u>People v. Superior Court</u> <u>(Romero)</u>, 13 Cal.4th 497 (1996) to strike Petitioner's two prior serious felony convictions.  The court sentenced Petitioner to an indeterminate state prison term of twenty-five years to life to run

1  consecutively to the sentence he was serving when he committed the

2  battery.  (Lodged Document (LD) 1; LD 2, 1.)

3       On September 2, 2011, the Court of Appeal of the State of

4  California, Fifth Appellate District (CCA) affirmed the judgment.

5  (LD 2.)  Petitioner did not file in the California Supreme Court

6  (CSC) a petition for review of the CCA's affirmance.

7       Petitioner filed three petitions for habeas corpus in the state

8  courts.[1]

9       On June 26, 2012, Petitioner constructively filed a petition

10 for writ of habeas corpus in the CCA (LD 3), which was summarily

11 denied on July 12, 2012, without a statement of reasoning or

12 citation of authority (LD 4).

13      A petition for writ of habeas corpus was stamped filed in the

14 _____

15 [1] Dates of filing are calculated pursuant to the "mailbox rule."  Habeas Rule 3(d)
   provides that a paper filed by a prisoner is timely if deposited in the
16 institution's internal mailing system on or before the last day for filing.  The
   rule requires the inmate to use the custodial institution's system designed for
17 legal mail; further, timely filing may be shown by a declaration in compliance
   with 28 U.S.C. § 1746 or by a notarized statement setting forth the date of
18 deposit and verifying prepayment of first-class postage.  Id.  Habeas Rule 3(d)
   reflects the "mailbox rule," initially developed in case law, pursuant to which a
19 prisoner's pro se habeas petition is "deemed filed when he hands it over to prison
   authorities for mailing to the relevant court."  Houston v. Lack, 487 U.S. 266,
20 276 (1988); Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir. 2001).  The mailbox
   rule applies to federal and state petitions alike.  Campbell v. Henry, 614 F.3d
21 1056, 1058-59 (9th Cir. 2010) (citing Stillman v. LaMarque, 319 F.3d 1199, 1201
   (9th. Cir. 2003), and Smith v. Ratelle, 323 F.3d 813, 816 n.2 (9th Cir. 2003)).
22 The mailbox rule, liberally applied, in effect assumes that absent evidence to the
   contrary, a legal document is filed on the date it was delivered to prison
23 authorities, and a petition was delivered on the day it was signed.  Houston v.
   Lack, 487 U.S. at 275-76; Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir.
24 2010); Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010); Lewis v.
   Mitchell, 173 F.Supp.2d 1057, 1058 n.1 (C.D.Cal. 2001).  The date a petition is
25 signed may be inferred to be the earliest possible date an inmate could submit his
   petition to prison authorities for filing under the mailbox rule.  Jenkins v.
26 Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003), overruled on other grounds, Pace
   v. DiGuglielmo, 544 U.S. 408 (2005).  However, if there is a long delay between
27 the alleged mailing and receipt by a court, a district court may attribute the
   discrepancy to various causes, including the court, the postal service, the prison
28 authorities, or the prisoner himself.  See, Koch v. Ricketts, 68 F.3d 1191, 1193
   n.3 (9th Cir. 1995) (concerning analogous Fed. R. App. P. 4(c)).

CCA on July 18, 2012.  The petition was substantively identical with the earlier petition.  The signature page was dated June 26, 2012, which was the same date reflected on the first state habeas petition's signature page and proof of service.  The second state petition lacks a proof of service.

With respect to the first state petition, the delay between signature and filing in the CCA was two days (from June 26, 2012, to June 28, 2012).  (LD 3 at form pp. 1, 6.)  With respect to the second petition, the delay between signature and filing was over three weeks (June 26, 2012, to July 18, 2012).  Applying the mailbox rule to obtain a filing date of June 26, 2012, for the second petition would be unwarranted not only because of the relatively long interval of time between the date appearing next to the signature and the date of filing in the CCA, but also because it does not seem reasonable to infer that Petitioner intended to send at one time two identical petitions to initiate two simultaneous but separate state habeas proceedings.  It is more likely that Petitioner intended to resubmit his petition after receiving notice of the denial of his previous petition on July 12, 2012.  (LD 4.) Thus, the Court considers Petitioner's second state habeas petition to have been filed on July 18, 2012, the date of the CCA's filing stamp.  (LD 5, 1.)

On July 25, 2012, Petitioner's second state habeas petition was summarily denied without a statement of reasoning or citation of authority.  (LD 6.)

On July 19, 2012, Petitioner constructively filed a petition for writ of habeas corpus in the CSC (LD 7, form. p. 6), which was denied on October 24, 2012.  The docket of the CSC reflects the

following note regarding the text of the denial order:

> The petition for writ of habeas corpus is denied.
> (See People v. Duvall (1995) 9 Cal.4th 464, 474;
> In re Swain (1949) 34 Cal.2d 300, 304.)

(LD 8.)

On September 17, 2013, Petitioner constructively filed the present petition (doc. 1 at 6, 39), in which he alleges that he suffered the ineffective assistance of appellate counsel in violation of his rights under the Sixth and Fourteenth Amendments for counsel's failure to raise on appeal the trial court's alleged abuse of discretion in failing to grant Petitioner's motion to strike a prior conviction under state law (doc. 1).

IV.   <u>Timeliness of the Petition</u>

The AEDPA provides a one-year period of limitation in which a petitioner must file a petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court

6

and made retroactively applicable to cases on collateral
review; or

(D) the date on which the factual predicate of the claim
or claims presented could have been discovered through the
exercise of due diligence.

(2) The time during which a properly filed application for
State post-conviction or other collateral review with
respect to the pertinent judgment or claim is pending
shall not be counted toward any period of limitation
under this subsection.

28 U.S.C. § 2244(d).

A.   Commencement and Running of the Limitations Period

Under § 2244(d)(1)(A), the "judgment" refers to the sentence imposed on the petitioner. Burton v. Stewart, 549 U.S. 147, 156-57 (2007). The last sentence was imposed on Petitioner on May 14, 2010. (LD 1, LD 2 at 1.)

Under § 2244(d)(1)(A), a judgment becomes final either upon the conclusion of direct review or the expiration of the time for seeking such review in the highest court from which review could be sought. Wixom v. Washington, 264 F.3d 894, 897 (9th Cir. 2001). The statute commences to run pursuant to § 2244(d)(1)(A) upon either 1) the conclusion of all direct criminal appeals in the state court system, followed by either the completion of denial of certiorari proceedings before the United States Supreme Court; or 2) if certiorari was not sought, then by the conclusion of all direct criminal appeals in the state court system followed by the expiration of the time permitted for filing a petition for writ of certiorari. Wixom, 264 F.3d at 897 (quoting Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998), cert. denied, 525 U.S. 1187 (1999)).

Here, neither party has indicated that Petitioner sought

7

certiorari from the United States Supreme Court.   Indeed, it is undisputed that Petitioner did not file a petition for review in the CSC.   The last state court decision, namely, the CCA's decision of September 2, 2011, was final pursuant to state law forty days later on October 12, 2011.[2]   The Supreme Court has held that where a petitioner did not seek review by the state's highest court, the petitioner's judgment becomes final when the time for pursuing direct review in state court expires:

> We now make clear what we suggested in those cases: The text of § 2244(d)(1)(A), which marks finality as of "the conclusion of direct review or the expiration of the time for seeking such review," consists of two prongs. Each prong—the "conclusion of direct review" and the "expiration of the time for seeking such review"—relates to a distinct category of petitioners. For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the "conclusion of direct review"—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in this Court, or in state court, expires. We thus agree with the Court of Appeals that because [the petitioner] did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired.

Gonzalez v. Thaler, - U.S. -, 132 S.Ct. 641, 653-54 (2012).

Thus, Petitioner's judgment became final within the meaning of § 2244(d)(1)(A) on October 12, 2011, when the time for seeking review from the CSC expired.

The Court will apply Fed. R. Civ. P. 6(a) in calculating the

---

[2] Pursuant to Cal. Rules of Court, Rule 8.500(e), a petition for review "must be served and filed within 10 days after the Court of Appeal decision is final in that court."  Pursuant to Cal. Rules of Court, Rule 8.366(b), a Court of Appeal's decision in a criminal appeal "is final in that court 30 days after filing."

pertinent time periods.  See, Waldrip v. Hall, 548 F.3d 729, 735 n.2 (9th Cir. 2008), cert. denied, 130 S.Ct. 2415 (2010).  Applying Fed. R. Civ. P. 6(a)(1)(A), the day of the triggering event is excluded from the calculation.  Thus, the one-year limitations period commenced on October 13, 2011, the first day following the expiration of the time in which direct state review could have been sought.  Further applying Rule 6(a)(1)(A), which requires counting every day, the one-year period concluded one year later on October 12, 2011.

Therefore, the limitation period began to run on October 13, 2011, and concluded one year later on October 12, 2012.

B.  Statutory Tolling

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period. 28 U.S.C. § 2244(d)(2).

An application for collateral review is "pending" in state court "as long as the ordinary state collateral review process is 'in continuance'- i.e., 'until the completion of' that process." Carey v. Saffold, 536 U.S. 214, 219-20 (2002).  In California, this generally means that the statute of limitations is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge, as long as the petitioner did not "unreasonably delay" in seeking review.  Id. at 221-23; accord, Nino v. Galaza, 183 F.3d 1003, 1006

1  (9th Cir. 1999).

2      The statute of limitations is not tolled from the time a final

3  decision is issued on direct state appeal and the time the first

4  state collateral challenge is filed because there is no case

5  "pending" during that interval.  Nino v. Galaza, 183 F.3d at 1006;

6  see, Lawrence v. Florida, 549 U.S. 327, 330-33 (2007) (holding that

7  the time period after a state court's denial of state post-

8  conviction relief and while a petition for certiorari is pending in

9  the United States Supreme Court is not tolled because no application

10  for state post-conviction or other state collateral review is

11  pending).

12      Here, Respondent does not contend that Petitioner's first state

13  habeas petition was improperly filed.  Between October 13, 2011, the

14  first day of the one-year limitations period, and June 25, 2012, the

15  last day preceding the day Petitioner filed his first state habeas

16  petition, 257 days elapsed.  The first state petition was pending

17  for seventeen days from June 26, 2012, through July 12, 2012.  The

18  statute was tolled for that period.

19      With respect to Petitioner's second state habeas petition,

20  Respondent contends that the petition did not toll the running of

21  the statute because Petitioner was not pursuing his application up

22  the ladder of the state court system.   Review is "pending" within

23  the meaning of § 2244(d)(2) only where a prisoner is pursuing a

24  single, full round of habeas relief in state court; thus, no review

25  is "pending" where a prisoner files a second petition in a court

26  which raises new claims and does not constitute merely an

27  elaboration of the facts relating to the claims in a prior petition

28  or an attempt to correct the prior petition's deficiencies.  Stancle

10

v. Clay, 692 F.3d 948, 951, 954-56 (9th Cir. 2012), cert. den., -
U.S. -, 133 S.Ct. 1465 (2013); Banjo v. Ayers, 614 F.3d 964, 968-69
(9th Cir. 2010), cert. den., Banjo v. Cullen, - U.S. -, 131 S.Ct.
3023 (2011).

Here, Petitioner's second state petition was identical with his
first state petition except the date was stated in a different form,
and the second petition lacked a proof of service.  There was no
elaboration or expansion of any aspect of the first petition's
claims or any appearance of an attempt to correct the prior
petition.  Thus, when Petitioner filed an identical petition in the
same court as the previous petition, Petitioner was not pursuing a
single, full round of habeas relief in state court.  Therefore,
Petitioner is not entitled to statutory "gap tolling" between the
denial of the first petition and the filing of the second.

In an effort to "apply the best case scenario" to Petitioner's
case, Respondent recognizes tolling of the limitations period during
the time that the second habeas petition was pending between July
18, 2012, through July 25, 2012, as well as during the "gap" between
the denial of the second petition on July 25, 2012, and the filing
of the third petition on October 24, 2012.  (Doc. 10, 5.)

In summary, from the first day of the limitations period on
October 13, 2011, through June 25, 2012, the date before the day the
first state petition was filed, 257 days of the limitations period
ran.  The statute was tolled for seventeen (17) days during the
actual pendency of the first state petition from June 26, 2012,
through July 12, 2012.  Five (5) days of the limitations period ran
beginning on July 13, 2012, the day after the first CCA petition was
denied, and concluding on July 17, 2012, the day before the second

CCA petition was filed.  The statute was tolled during the pendency of the second CCA petition, i.e., from the day it was filed on July 18, 2012, through July 25, 2012, when it was denied, and then continuously until the filing of the third petition in the CSC, and thereafter until the third petition was denied on October 24, 2012. There was no tolling thereafter.  From July 18, 2012, through October 24, 2012, the statute was tolled for a total of 99 days. Thus, by October 24, 2012, 262 days of the statute had run, leaving 103 days of the limitations period, which would thus expire on February 4, 2013.

Even if statutory tolling is considered, the petition in the instant proceeding was not constructively filed until September 17, 2013, many months after the running of the one-year limitations period.  Thus, absent grounds for equitable tolling, the petition in the instant proceeding is untimely because it was filed after the statute of limitations had run.

C.  Equitable Tolling

Petitioner argues that he is entitled to equitable tolling based on several factors, including his appellate counsel's abandonment of his claim that the trial court abused its discretion in failing to strike Petitioner's prior convictions, Petitioner's generalized assertion of his "lack of capacity in representing himself," and "the scarcity of channels seeking legal assistance and conducting an ongoing investigation and research in the law supporting Petitioner's claim when the Petitioner did not know about the law earlier on this claim." (Doc. 1, 13.)  Petitioner asserts generally that he has followed every procedure that the courts required of him and that he has shown due diligence.  He asserts

that he is a lay person who has filed his papers with the assistance of fellow inmates.  (Doc. 12, 2-3.)

The one-year limitation period of § 2244 is subject to equitable tolling where the petitioner shows that he or she has been diligent, and extraordinary circumstances have prevented the petitioner from filing a timely petition.  Holland v. Florida, – U.S. –, 130 S.Ct. 2549, 2560, 2562 (2010).  Petitioner bears the burden of showing the requisite extraordinary circumstances and diligence.  Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010).  A petitioner must provide specific facts regarding what was done to pursue the petitioner's claims to demonstrate that equitable tolling is warranted.  Roy v. Lampert, 465 F.3d 964, 973 (9th Cir. 2006).  Conclusional allegations are generally inadequate.  Williams v. Dexter, 649 F.Supp.2d 1055, 1061-62 (C.D.Cal. 2009).  The petitioner must show that the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time.  Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009).  Where a prisoner fails to show any causal connection between the grounds upon which he asserts a right to equitable tolling and his inability to timely file a federal habeas application, the equitable tolling claim will be denied.  Gaston v. Palmer, 417 F.3d 1030, 1034-35 (9th Cir. 2005).  A prisoner's failure to recognize that a state filing was unreasonably delayed under California law is not the result of an "external force" that rendered timeliness impossible, but rather is attributable to the petitioner as the result of his own actions.  Velasquez v. Kirkland, 639 F.3d 964, 969 (9th Cir. 2011).

The diligence required for equitable tolling is reasonable

13

diligence, not "maximum feasible diligence." Holland v. Florida, 130 S.Ct. at 2565.  However, "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Spitsyn v. Moore, 345 F.3d 796, 799 (quoting Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002)).  A petitioner seeking equitable tolling must demonstrate reasonable diligence while exhausting state court remedies as well as while attempting to file a federal petition during the period after the extraordinary circumstances began. Roy v. Lampert, 465 F.3d 964, 971 (9th Cir. 2006).  The effort required is what a reasonable person might be expected to deliver under his or her particular circumstances. Doe v. Busby, 661 F.3d 1001, 1015 (9th Cir. 2011).  Because a pro se petitioner's habeas filings must be construed with deference, a court will construe liberally such a petitioner's allegations regarding diligence.  Roy v. Lampert, 465 F.3d 964, 970 (9th Cir. 2006).

     Petitioner contends that his appellate counsel, who filed a brief pursuant to People v. Wende, 25 Cal.3d 436 (1979) summarizing the facts and proceedings but raising no issues, deliberately refused to raise Petitioner's abuse of discretion claim.  Petitioner claims that this occurred when justice required that counsel assist him, and that Petitioner thereby suffered a violation of his right to the effective assistance of counsel protected by the Sixth and Fourteenth Amendments and the Due Process Clause.  (Doc. 12, 2.)  Reference to the appellate record reflects that Petitioner was given a copy of the record and an opportunity to file his own letter brief, and he did file his own brief; however, the only issues he raised pertained to the ineffective assistance of counsel relating

14

1  to evidence and objections at trial; he raised no issues concerning

2  sentencing or the sentencing court's denial of the motion to strike.

3  (Doc. 1, 20-22.)  Petitioner also refers to an "exhibit letter" from

4  counsel asking Petitioner to request a new attorney from the CCA,

5  which the Court understands as a reference to the letter counsel

6  sent to Petitioner with notice that he was filing a brief in which

7  he did not raise any issues on appeal, was remaining available to

8  brief issues as requested by the Court, and informed Petitioner of

9  Petitioner's right to file a request to relieve counsel on appeal.

10  (Doc. 12, 2:24-25; doc. 1 at 30.)

11      Petitioner has not shown that counsel abandoned him or that he

12  even rendered substandard assistance; rather, it appears that

13  counsel and Petitioner disagreed concerning the appropriate issues

14  to raise for appellate review, but that Petitioner did not seek to

15  replace his appointed appellate counsel.

16      Further, any disagreement with counsel during the direct appeal

17  does not serve to explain any of Petitioner's later delay in filing

18  collateral challenges in the course of exhausting state court

19  remedies.

20      Insofar as Petitioner relies on his ignorance of the law and

21  his status as a pro se litigant operating from prison with limited

22  resources, Petitioner's pro se status is not an extraordinary

23  circumstance.  Chaffer v. Prosper, 592 U.S. 1046, 1049 (9th Cir.

24  2010).  A pro se petitioner's confusion or ignorance of the law

25  is not alone a circumstance warranting equitable tolling.  Rasberry

26  v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006).

27      Likewise, limitations on law library access and research

28  materials are not extraordinary, but rather are normal conditions

1   of prison life.  Chaffer v. Prosper, 592 F.3d at 1049.  Further,

2   Petitioner has not shown how any specific instance of allegedly

3   inadequate access or materials caused him to be unable to

4   file a timely petition.

5        Accordingly, the Court concludes that Petitioner has not shown

6   that the limitation period was equitably tolled.

7        In summary, the Court concludes that the petition was untimely

8   filed and that Respondent's motion to dismiss the petition as

9   untimely filed should be granted.

10       V.   Failure to Exhaust State Court Remedies

11       The Court has determined that a federal forum is not available

12  for Petitioner's claims because the petition was untimely filed.

13       However, Respondent further contends that Petitioner failed to

14  exhaust state court remedies before the state courts and that the

15  petition should therefore be dismissed.

16       A.   Legal Standards

17       A petitioner who is in state custody and wishes to challenge

18  collaterally a conviction by a petition for writ of habeas corpus

19  must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The

20  exhaustion doctrine is based on comity to the state court and gives

21  the state court the initial opportunity to correct the state's

22  alleged constitutional deprivations.  Coleman v. Thompson, 501 U.S.

23  722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v.

24  Sunn, 854 F.2d 1158, 1162-63 (9th Cir. 1988).

25       A petitioner can satisfy the exhaustion requirement by

26  providing the highest state court with the necessary jurisdiction a

27  full and fair opportunity to consider each claim before presenting

28  it to the federal court, and demonstrating that no state remedy

16

remains available.  Picard v. Connor, 404 U.S. 270, 275-76 (1971);

Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996).  A federal court

will find that the highest state court was given a full and fair

opportunity to hear a claim if the petitioner has presented the

highest state court with the claim's factual and legal basis.

Duncan v. Henry, 513 U.S. 364, 365 (1995) (legal basis); Kenney v.

Tamayo-Reyes, 504 U.S. 1, 9-10 (1992), superceded by statute as

stated in Williams v. Taylor, 529 U.S. 362 (2000) (factual basis).

Additionally, the petitioner must have specifically told the

state court that he was raising a federal constitutional claim.

Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669

(9th Cir. 2000), amended, 247 F.3d 904 (9th Cir. 2001); Hiivala v.

Wood, 195 F.3d 1098, 1106 (9th Cir. 1999); Keating v. Hood, 133 F.3d

1240, 1241 (9th Cir. 1998).  In Duncan, the United States Supreme

Court reiterated the rule as follows:

> In Picard v. Connor, 404 U.S. 270, 275...(1971),
> we said that exhaustion of state remedies requires that
> petitioners "fairly presen[t]" federal claims to the
> state courts in order to give the State the
> "'opportunity to pass upon and correct' alleged
> violations of the prisoners' federal rights" (some
> internal quotation marks omitted). If state courts are
> to be given the opportunity to correct alleged violations
> of prisoners' federal rights, they must surely be
> alerted to the fact that the prisoners are asserting
> claims under the United States Constitution. If a
> habeas petitioner wishes to claim that an evidentiary
> ruling at a state court trial denied him the due
> process of law guaranteed by the Fourteenth Amendment,
> he must say so, not only in federal court, but in state
> court.

Duncan, 513 U.S. at 365-366.  The Ninth Circuit examined the rule

further in Lyons v. Crawford, 232 F.3d 666, 668-69 (9th Cir. 2000),

as amended by <u>Lyons v. Crawford</u>, 247 F.3d 904, 904-05 (9th Cir. 2001), stating:

> Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law. <u>See</u>, <u>Shumway v. Payne</u>, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in <u>Duncan</u>, this court has held that the petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident," <u>Gatlin v. Madding</u>, 189 F.3d 882, 889 (9th Cir. 1999) (citing <u>Anderson v. Harless</u>, 459 U.S. 4, 7... (1982), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds, see, <u>e.g.</u>, <u>Hiivala v. Wood</u>, 195 F.3d 1098, 1106-07 (9th Cir. 1999); <u>Johnson v. Zenon</u>, 88 F.3d 828, 830-31 (9th Cir. 1996); <u>Crotts</u>, 73 F.3d at 865.
> ...
> In <u>Johnson</u>, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

<u>Lyons v. Crawford</u>, 232 F.3d 666, 668-69 (9th Cir. 2000), as amended by <u>Lyons v. Crawford</u>, 247 F.3d 904, 904-05 (9th Cir. 2001).

Where none of a petitioner's claims has been presented to the highest state court as required by the exhaustion doctrine, the Court must dismiss the petition.  <u>Rasberry v. Garcia</u>, 448 F.3d 1150, 1154 (9th Cir. 2006); <u>Jiminez v. Rice</u>, 276 F.3d 478, 481 (9th Cir. 2001).  The authority of a court to hold a mixed petition in abeyance pending exhaustion of the unexhausted claims has not been extended to petitions that contain no exhausted claims.  <u>Rasberry</u>, 448 F.3d at 1154.

1    B.  Analysis

2         Although Petitioner raised his claims concerning the

3    ineffective assistance of appellate counsel before the CSC, the CSC

4    denied Petitioner's petition with citations to People v. Duvall, 9

5    Cal.4th 464, 474 (1995) and In re Swain, 34 Cal.2d 300, 304 (1949).

6    "Swain is cited by the California Supreme Court to indicate that

7    claims have not been alleged with sufficient particularity," a

8    "deficiency, when it exists, [that] can be cured in a renewed

9    petition." Cross v. Sisto, 676 F.3d 1172, 1178 (9th Cir. 2012)

10   (citing Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986) (in

11   turn reversing a district court's dismissal of a habeas petition for

12   failure to exhaust state remedies and remanding to the district

13   court)).  However, mere citation to Swain does not establish that

14   Petitioner failed to exhaust his state court remedies; rather, this

15   Court's task is to examine and evaluate independently whether the

16   federal standard of "fair presentation" of a claim to the state

17   courts has been met.  Kim v. Villalobos, 799 F.2d at 1319-20.

18        Here, in the petition filed in the California Supreme Court,

19   Petitioner identified the legal basis of his claim of the

20   ineffective assistance of appellate counsel during a first appeal as

21   of right by referring to the Sixth and Fourteenth Amendments,

22   stating that his rights to the effective assistance of appellate

23   counsel had been violated, and affixing state case reports

24   concerning the underlying discretionary decision.  (LD 7, third

25   page.)  Petitioner also clearly stated the factual basis of the

26   claim by informing the CSC that his appellate counsel filed a Wende

27   brief and failed and refused to raise a claim that the trial court

28   abused its discretion in failing to strike two prior convictions of

19

1  murder and robbery suffered by Petitioner in the Riverside County

2  Superior Court.  (LD 7, third page & ex. D.)

3       It therefore appears that Petitioner fairly presented his claim

4  to the CSC and did not fail to exhaust his state court remedies.

5       VI.  <u>Certificate of Appealability</u>

6       Unless a circuit justice or judge issues a certificate of

7  appealability, an appeal may not be taken to the Court of Appeals

8  from the final order in a habeas proceeding in which the detention

9  complained of arises out of process issued by a state court  28

10 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336

11 (2003).  A district court must issue or deny a certificate of

12 appealability when it enters a final order adverse to the applicant.

13 Rule 11(a) of the Rules Governing Section 2254 Cases.

14      A certificate of appealability may issue only if the applicant

15 makes a substantial showing of the denial of a constitutional right.

16 § 2253(c)(2).  Under this standard, a petitioner must show that

17 reasonable jurists could debate whether the petition should have

18 been resolved in a different manner or that the issues presented

19 were adequate to deserve encouragement to proceed further.  <u>Miller-</u>

20 <u>El v. Cockrell</u>, 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S.

21 473, 484 (2000)).  A certificate should issue if the petitioner

22 shows that jurists of reason would find it debatable whether the

23 petition states a valid claim of the denial of a constitutional

24 right and, with respect to a procedural denial, that jurists of

25 reason would find it debatable whether the district court was

26 correct in any procedural ruling.  <u>Slack v. McDaniel</u>, 529 U.S. at

27 483-84.

28

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was wrong or debatable among jurists of reason.  Id.  It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, the Court will decline to issue a certificate of appealability.

VII.  Disposition

In accordance with the foregoing analysis, it is ORDERED that:

1) Respondent's motion to dismiss the petition as untimely is GRANTED; and

2) The petition for writ of habeas corpus is DISMISSED with prejudice as untimely filed; and

3) The Clerk shall ENTER judgment for Respondent; and

4) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **February 25, 2014**          /s/ Barbara A. McAuliffe
                                        UNITED STATES MAGISTRATE JUDGE